CECELIA VALDEZ v. THE STATE.

No. 19719.   Delivered May 11, 1938.
Rehearing denied June 15, 1938.

The opinion states the case.

*Dibrell, Mosheim & Campbell,* of Seguin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is possession of marihuana; the punishment, confinement in the penitentiary for two years.

On the first of September, 1937, the sheriff of Guadalupe County, accompanied by a deputy sheriff, went to the home of appellant in Seguin for the purpose of searching for marihuana. We quote from the testimony of the sheriff, as follows: "In my

official capacity as sheriff I called Cecelia Valdez out and talked to her, then pulled up some marihuana she had in her yard, and asked her did she have any in the house and she said 'Yes' and she got that and handed it to me. Then I asked her if that was all she had, and she said 'Yes' but I found another grass sack full in her shed outside and after that I arrested her and placed her in jail. As to what I did with the stuff that I got there and that Cecelia Valdez said was marihuana I turned it over to the Department of Safety for chemical analysis to be made of it. Mr. Fred Olsen of the Texas State Department of Public Safety came down to Seguin and I turned over to him this stuff that I had gotten at the defendant's house and that the defendant said was marihuana. The envelope marked 'Sample No. 1' is a part of the stuff that was growing in Cecelia Valdez's yard; and also a part of the sample that I turned over to Mr. Fred Olsen. The envelope marked 'No. 2' is a part of the stuff Cecelia Valdez handed to me out of the house. She got this sample No. 2 out of her house and handed it to me and told me it was marihuana. Sample No. 2 is in the original paper it was handed me in. The envelope marked 'No. 3' is a sample of the stuff she had in the grass sacks hanging in her shed."

The testimony of the deputy sheriff was substantially the same as that of the sheriff.

Fred C. Olsen, of the Department of Public Safety of Texas, testified that he received the samples in question from the sheriff. J. H. Arnette, a chemist in the Department of Public Safety, testified that he received the samples from Mr. Olsen. We quote from his testimony as follows: "We take some of the leaves and flowering tops and extract the supposedly active ingredient, cannabinol. After making this extract we take it to dryness in a test tube on a water bath and when dry we add absolute alcohol which has been saturated with dry hydrogen chloride gas. This gives us a cherry red color which is indicative of cannabis sativa or marihuana. This is our final test for this plant."

Further, he testified: "I believe that there were a few seeds along with the specimen in Sample No. 2; there were some seeds, I remember, but I will not be positive. The other specimens were not stalks, they were leaves; the leaves are what we work with principally, the flower." He testified further: "I just found this was cannabis sativa, and I did not try to find out what variety it was. This marihuana has a resinous substance in it, you find that in the flowering tops."

In short, the testimony of the chemist showed that the samples were marihuana.

Appellant testified and denied that she had any marihuana in her house. She said the two plants in the yard were mature stalks which had begun to dry up. She admitted that the marihuana found in her garage belonged to her. She said: "I put that in grass sacks and put it in my garage and was going to use it to drink—for tea."

Subdivision (13) of Section 1 of H. B. 440, Acts of the Regular Session of the 45th Legislature, reads as follows: "The term 'Cannabis' as used in this Act shall include all parts of the plant Cannabis Sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the nonresinous oil obtained from such seed, nor the mature stalks of such plant, nor any product or manufacture of such stalks, except the resin extracted therefrom and any compound, manufacture, salt, derivative, mixture, or preparation of such resin. The term 'Cannabis' shall include those varieties of Cannabis known as Marihuana, Hasheesh and Hasish."

In view of appellant's testimony that the plants found in the yard were the mature stalks, appellant sought to have the court define the term "Cannabis" as used in the above quotation. Further, she sought to have the court instruct the jury that she could not be convicted for possessing the mature stalks. It is observed that appellant admitted that the marihuana found in her garage belonged to her. She made no claim in her testimony that it consisted of mature stalks. The testimony of the chemist to the effect that specimen No. 3, which was part of the marihuana the officers had discovered in the garage, did not consist of stalks was uncontroverted. He said: "They were leaves; the leaves are what we work with principally, the flower."

If it should be conceded that the charge in question would have been proper, it is observed that the testimony conclusively shows that appellant had in her garage marihuana of the type denounced by the statute. Appellant received the minimum penalty. Under the terms of the statute, she was not entitled to file an application for a suspended sentence. Under the circumstances, if the limiting charge should have been given, we are of opinion that its refusal should not be held to constitute reversible error.

Appellant's testimony was substantially the same as that of the officers relative to the finding of the marihuana in the garage. Hence the fact that she might have been under arrest when the search was made would become immaterial.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

KRUEGER, JUDGE.—Appellant insists that on the original submission of this cause we misconstrued her testimony and as a result erred in holding that the trial judge committed no error in failing to instruct the jury that if samples numbers two and three contained substances other than marihuana, then to acquit her.

She contends that sample number two contained ruda, while sample number three, which the sheriff obtained from her garage, was anias. The chemist who analyzed these samples testified that all of them contained cannabis sativa, commonly known as marihuana. He also testified that samples numbers two and three contained some other ingredients, unknown to him.

It is our opinion that this testimony clearly demonstrates the fact that she possessed marihuana. It is of no consequence what *she* called the contents of the samples; the fact remains that they contained marihuana. Calling a certain substance by one name, when in fact and in truth the substance proves to be another, would not require the trial court to give a charge to the jury thereon. She might just as gracefully have maintained that calling a cantaloupe a watermelon would necessitate a charge by the court that it was a watermelon.

The testimony of the chemist unequivocally shows the presence of marihuana in each of the samples. Consequently, there was no necessity for the trial judge to charge in accordance with her contention.

All other matters urged by appellant in her motion have been considered by us and deemed to be without merit.

Accordingly, the motion for a rehearing will be overruled.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.