Joshua McLEAN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: June 18, 1984.

Decided: Aug. 31, 1984.

David M. Lukoff, Asst. Public Defender, for appellant.

Joseph J. Longobardi, III, Deputy Atty. Gen., for appellee.

Before HERRMANN, C.J., HORSEY and CHRISTIE, JJ.

CHRISTIE, Justice:

Defendant, Joshua L. McLean, appeals his conviction of vehicular homicide in the first degree under the provisions of 11 *Del.C.* § 630A.[1] Defendant did not testify at his trial, and he called no witnesses. His only contention on appeal is that the admission of a hospital record containing the results of a blood-alcohol content analysis, without the testimony of the hospital technician who performed the test, violated his right of confrontation guaranteed by Art. I § 7 of the Delaware Constitution[2] and the Sixth Amendment to the United States Constitution.[3] The Superior Court ruled that the hospital record was a business record and was admissible as such under rules now codified as D.R.E. 803(6). In so holding, Superior Court also ruled that defendant's constitutional rights of confrontation had not been violated. We affirm.

On the evening of November 20, 1983 Dalinda Hopkins and a passenger were driving south on Market Street in Wilmington. As Ms. Hopkins prepared to make a left turn from the left-hand lane in which she was driving, her vehicle was struck by an oncoming car driven by defendant. Testimony of the investigating officer indicated that the defendant had been driving northbound on Market Street at an excessive rate of speed,[4] and his car had crossed the double yellow center line, colliding with Ms. Hopkins' vehicle. The passenger in the Hopkins' vehicle died as a result of the collision.

Defendant was subsequently taken to the Wilmington Medical Center for treatment of his injuries. There, Dr. Clayton, a surgical resident, was summoned to the emergency room to perform a surgical evaluation of defendant. As part of this evaluation, the doctor ordered that certain tests be performed, including a blood-alcohol analysis.

This test is administered in accordance with normal hospital procedures in connection with the treatment of emergency room patients. The phlebotomist, who was responsible for drawing the blood, testified as to the specific procedures which are routinely followed in preparing a patient's blood for alcohol-content analysis. After

---

1. 11 *Del.C.* § 630A. *Vehicular homicide in the first degree; class D felony.*

   "A person is guilty of vehicular homicide in the first degree when while in the course of driving or operating a motor vehicle under the influence of alcohol or drugs, as defined by § 4177 of Title 21, his criminally negligent driving or operation of said vehicle causes the death of another person."

2. Del. Const. Art. I § 7 provides in pertinent part:

   "In all criminal prosecutions, the accused hath a right ... to meet the witnesses in their examination face to face ...."

3. Fed. Const. Sixth Amend. provides in pertinent part:

   "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

4. It was estimated that defendant was driving 54 miles per hour in a 35 mile per hour zone.

the patient's identification armband is checked to make sure that the order issued by the doctor applies to that patient, the patient's arm is washed with soap or Phisohex. The blood is then drawn and taken to the laboratory where the blood is analyzed. A notation is made on the patient's hospital chart indicating that the aforementioned procedures have been followed.

After the blood is transferred to the laboratory, the lab technician, a Wilmington Medical Center employee, performs the necessary blood tests and the results are sent to the emergency room where they are recorded in the appropriate hospital chart. These charts are also prepared as part of standard hospital procedures.

The blood-alcohol analysis performed on defendant, as recorded on his chart, indicated a reading of .215 grams of alcohol per deciliter. The indicated alcohol level far exceeded the blood-alcohol content required to prove driving under the influence of alcohol under 21 *Del.C.* § 4177(b).[5]

The lab technician who performed the test did not testify at trial. Defendant contends that, absent the testimony of the technician, the accuracy of the blood alcohol analysis could not be adequately verified and, therefore, it should not have been admitted into evidence. Defendant goes on to point out that if the results of the blood-alcohol test had not been admitted, the State's proof of vehicular homicide in the first degree would have been incomplete.

This Court must decide whether the test results were properly admitted into evidence pursuant to the business records exception of D.R.E. 803(6) even though the technician who actually performed the test did not testify.

We must first consider the applicable hearsay exception in light of defendant's constitutional rights of confrontation.

The right of an accused to confront witnesses against him is a fundamental element of fairness in criminal proceedings. *See Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965); *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980); *Ward v. State,* Del.Supr., 395 A.2d 367, 368 (1978). However, the right of confrontation is not absolute, and reliable hearsay evidence is sometimes admitted. *Henson v. State,* Del.Supr., 332 A.2d 773, 775 (1975). It has long been recognized that there are certain exceptions to the hearsay rule where the evidence bears sufficient "indicia of reliability" and rests on such solid foundations that admission of such evidence is deemed not to violate the guarantees of the Confrontation Clause.[6] *See Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539; *Mattox v. United States,* 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895). The Supreme Court has recognized that the Confrontation Clause and the hearsay rules (including the exceptions thereto) are generally designed to protect similar values. *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970). Each seeks to insure the accuracy of trial testimony.

It must be noted, however, that the mere fact that evidence falls within a prescribed hearsay exception does not automatically satisfy the dictates of the Confrontation Clause. In each case, the trial judge must determine whether under those particular circumstances, the defendant's constitutional rights of confrontation have been adequately protected. *Henson v. State,* 332 A.2d at 775. Only if the court has abused its discretion will the trial judge's decision be disturbed. *Hanley v. United States,* 416 F.2d at 1168; *United*

---

**5.** 21 *Del.C.* § 4177(b) states that a person whose blood-alcohol concentration is shown by chemical analysis to be one tenth of 1% or more is guilty of operating a vehicle while under the influence of alcohol.

**6.** *See, e.g., Pointer v. Texas,* 380 U.S. at 407, 85 S.Ct. at 1069 (dying declarations); *Ried v. Beto,* 343 F.2d 723, 724 (5th Cir.1965) (public records); *Hanly v. United States,* 416 F.2d 1160, 1167 (5th Cir.1969) (business records).

*States v. Penn,* 721 F.2d 762, 765 (11th Cir.1983).

We review the record in this case to determine whether the test results had sufficient indicia of reliability to permit their admission without a violation of defendant's right of confrontation.

We do this in the light of the modern business records approach contained in our rules of evidence. D.R.E. 803(6) states:

A memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation and calling of every kind, whether or not conducted for profit.

■ This uniform rule lists four basic requirements which are to be satisfied before a particular business record may be admitted without the testimony of those who made the record, and/or those who compiled the information contained therein.

■ First, the record must be prepared and maintained in the regular course of business. It is the habit and continuity of keeping records germane to the business activity which lends reliability to the business records. *See generally McCormick on Evidence* § 306 (2d ed. 1972); 5 *Wigmore on Evidence* § 1522 (Chadbourne rev. 1979); Fed.R.Evid. 803(6) advisory committee note. Testimony elicited at trial indicates that the performance of the blood-alcohol analysis was consistent with normal hospital procedures in the treatment of emergency room patients. Hospital charts recording the results of defendant's tests and treatment were also prepared and maintained in the regular course of the hospital's activities. Furthermore, it is not improper for courts to take judicial notice of the fact that the business of a metropolitan hospital is such that records of this type are relied upon by the doctors in decisions of the upmost importance—the diagnosis and treatment of patients. Since these records are depended upon in connection with medical treatment which may involve life and death consequences, they may be even more trustworthy than other business entries.

The second requirement of D.R.E. 803(6) is that the record be made at or near the time of the event recorded. *See generally* 5 *Wigmore on Evidence* § 1526 (Chadbourne rev. 1974); *State v. Matorelli,* N.J. Super., 346 A.2d 618, 620 (1975). The trial record indicates that the pertinent entries were made contemporaneously with the blood analysis.

The third element required in D.R.E. 803(6) is a lack of evidence of the unreliability of the record. In effect, the compilation of the information, its source and the circumstances of recordation must be generally trustworthy. *See* 5 *Wigmore on Evidence* § 1530 (Chadbourne rev. 1974); *State v. Matorelli, supra* at 620. The lab technician who entered the results of the blood-alcohol content test, as an employee of the Wilmington Medical Center, was under a strict obligation to perform the test properly and to accurately record the results. Such employees may be assumed to be fully aware of the possible consequences of inaccurate tests and faulty entries, and it is likely that they did their duties properly.

Finally, a fourth element of the Delaware rule requires that a custodian or other qualified witness be available to testify.[7]

---

7. *See, e.g., Thomas v. Hogan,* 308 F.2d 355 (4th Cir.1962) (where a doctor's testimony and a hospital record containing blood-alcohol content test results were admitted without the testi-

*See generally McCormick on Evidence* § 312 (2d ed. 1972). In the present circumstances, the doctor who ordered the test and the phlebotomist who drew the blood both testified. They provided information as to how the blood is readied for testing and as to the procedures which are involved in the preparation of a hospital record, such as the one before the Court.

Considering the routine nature of the blood-alcohol analysis and the frequency with which these tests are administered by lab technicians, it is highly improbable that cross-examination of the technician would have cast doubt on the tests which were performed or on the test results entered on defendant's chart. The fact that the blood tests were ordered by hospital personnel and consisted of purely factual findings tends to increase the trustworthiness of the hospital entry.

Satisfaction of the aforementioned elements creates a presumption of reliability and removes the record from that category of evidence which entitles the defendant to a face-to-face confrontation. *See generally Thomas v. Hogan, supra* n. 7, at 360.

■ Defendant's State and Federal constitutional rights of confrontation were not abridged by the admission of the business records containing the test results because of the regularity and inherent reliability of the tests and of the record-keeping process in this particular case. AFFIRMED.

mony of the technician who performed the test); *State v. Cosgrove,* Conn.Supr., 181 Conn. 562, 436 A.2d 33 (1980) (where a toxicological report containing statements of the chemist indicating that certain substances were marijuana was admitted, even though the chemist was not called to testify).