THE STATE OF OHIO, APPELLEE, *v.* WALKER, APPELLANT.

[Cite as State v. Walker (1978), 53 Ohio St. 2d 192.]

(No. 77-678—Decided March 22, 1978.)

*Ms. Jane I. Rinfret*, assistant prosecuting attorney, for appellee.

*Mr. Roger W. Kienzle, Jr.*, for appellant.

SWEENEY, J. The single issue in this cause is whether the trial court erred in overruling the appellant's objection to the admission in evidence of portions of a permanent log book maintained by the Police Department of the city of Wooster introduced by the prosecution to show that the breath analysis machine used in testing the defendant was in proper working order as required by this court's pronouncements in paragraph six of the syllabus in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, and paragraph one of the syllabus in *Cincinnati* v. *Sand* (1975), 43 Ohio St. 2d 79.

Appellant contends that the two pages of the permanent log book is a business record within the meaning of R. C. 2317.40, and that as such, is inadmissible in evidence as an exception to the hearsay rule based on this court's holding in *State* v. *Tims* (1967), 9 Ohio St. 2d 136. Appellee, on the other hand, contends that the log book is an official report kept by officers of this state as required by regulations promulgated by the Director of Health, and thus, was properly admitted in evidence under the official-reports-as-evidence exception to the hearsay rule found in R. C. 2317.42. Determination of the applicable exception to the hearsay rule directly affects the outcome in this cause, since, in authenticating the document during trial the prosecution did not call as a witness the custodian, supervisor, or maker of the record as required under R. C. 2317.40, but rather merely submitted a certified copy of the report as permitted under R. C. 2317.42.

R. C. 2317.42 provides:

"Official reports made by officers of this state, or certified copies of the same, on a matter within the scope of their duty as defined by statute, shall, insofar as relevant, be admitted as evidence of the matters stated therein."

In discussing the necessity for the official-reports-as-evidence exception, this court noted that:

"The General Assembly, recognizing the need for an authority that 'would make admissible various sorts of reports dealing with matters seldom disputable and only provable otherwise at disproportionate inconvenience and

cost' (5 Wigmore on Evidence [3 Ed.], 699 Section 1672), enacted Section 2317.42, Revised Code, thereby greatly facilitating the production of evidence with little chance of it being untrustworthy." *State* v. *Colvin* (1969), 19 Ohio St. 2d 86, at 89. As commented in 5 Wigmore on Evidence (3 Ed.), 618, Section 1632:

"* * * When it is a part of the *duty of a public officer* to make a statement as to a fact coming within his official cognizance, the great probability is that he does his duty and makes a correct statement. The consideration that regularity of habit, a chief basis for the exception for regular entries * * *, will tend to this end is not here an essential one; for casual statements, such as certificates, may be admissible, as well as a regular series of entries in a registry. The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfillment."

Applying the above statutory provisions to the cause at bar, the court finds that portions of the permanent log book are admissible under the official-reports-as-evidence exception. Clearly, police officers of the city of Wooster are "officers of this state" within the meaning of R. C. 2317.42. Furthermore, under the rules promulgated by the Director of Health pursuant to R. C. 3701.143, members of the police department of the city of Wooster have the duty of conducting calibration tests on breath analysis machines and recording the results therefrom in a permanent log book kept on file at the station. Specifically, the rules require, in part, that, except for sober-meters, breath testing instruments must be calibrated by a qualified senior

---

[1] R. C. 3701.143 provides:

"The director of health shall determine, or cause to be determined, techniques, or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol in a person's blood. The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses. * * *"

operator "using methods and techniques for calibration recommended by the manufacturer of the calibration instrument or the director of health" no less frequently than after every ten tests, or after every nine days if fewer than ten tests are performed in any nine-day period (Ohio Administrative Code Rule 3701-53-04[A]), and that the results of the calibration tests shall be kept in a record book for not more than three years. (Ohio Administrative Code Rule 3701-53-04[C].)

In accord with our holding that certified copies of an official report regarding the proper calibration of the breath analysis machine are sufficiently reliable to warrant their admissibility in evidence as an exception to the hearsay rule are *Wester* v. *State* (Alaska 1974), 528 P. 2d 1179, certiorari denied 423 U. S . 836; *State* v. *McGeary* (1974), 129 N. J. Super. 219, 322 A. 2d 830; *State* v. *Woodward* (1 Ore. App. 338), 462 P. 2d 685; *Stroupe* v. *Commonwealth* (1974), 215 Va. 243, 207 S. E. 2d 894; and *Duff* v. *State* (Crim. App. Tex. 1974), 503 S. W. 2d 785.

A common approach adopted by a growing number of jurisdictions with respect to questions concerning the proper foundation needed for the introduction of breath analysis test results in evidence is set forth by the Court of Appeals of New York in *People* v. *Gower* (1977), 42 N. Y. 2d 117, 366 N. E. 2d 69, at page 71, wherein that court stated:

"* * * Perhaps of greater importance than the procedural issue concerning the admissibility of particular forms of documentary evidence, is the underlying question of substantive law—what foundation must now be laid for the admission of breathalyzer results. Breathalyzer equipment and procedures have become familiar and their use is now commonplace. Reliability has been demonstrated and the results of such testing where properly performed are universally accepted. This is not to say, however, that no foundation should be any longer required for introduction of breathalyzer evidence. It is to say that there may now appropriately be some relaxation of the rigorous prerequi-

sites properly required to authenticate the reliability of the scientific equipment and procedures where they were first employed. Based on a wealth of practical experience greater dependence can now properly be placed on according full opportunity, through pretrial discovery and other means, to test and challenge the probative worth of the evidence. Thus, emphasis may be shifted from technical issues of admissibility of evidence to means for measuring its persuasive weight. No precise or even general guidelines can be laid down in advance; necessarily the requirements in each case will depend on the peculiar circumstances of that case."

We find this approach persuasive. In Ohio, it is not questioned that through pre-trial discovery under Crim. R. 16 the defense may obtain the name of the individual responsible for conducting the calibration test, and determine through deposition under Crim. R. 15 whether such individual utilized the proper methods in calibrating the machine. Furthermore, the defense may subpoena the official as a witness to testify at trial under Crim. R. 17 if deemed necessary. These protections adequately provide the defense every opportunity of insuring that the breath analysis machine was in proper working order when used in testing the defendant. To require as a matter of law that the officer who performed the calibration test (who perhaps has conducted several such tests as a matter of routine) testify at trial where the permanent record of the calibration tests and the results therefrom are readily available does not merit adoption by this court.

Because certified copies of portions of the permanent log book qualify under the official-reports-as-evidence exception, the court finds that the documents in issue were properly authenticated by the prosecution under R. C. 2317.42.

The remaining question to be resolved is the impact of *Tims, supra* (9 Ohio St. 2d 136), to the cause at bar.

In the syllabus of *Tims,* at page 136, this court held:

"The Business Records as Evidence Act, Section 2317.-

40, Revised Code, which allows the admission into evidence of records without substantiation by the person who actually performed the acts which resulted in such record, is not applicable to criminal proceedings so as to allow the admission into evidence under such act of hospital records showing the results of a physical examination of an alleged rape victim." Although language in the syllabus narrowly confines the holding of the case to the Business Records as Evidence Act as applied to the admissibility of hospital records in criminal proceedings, there is broad language in the main body of the opinion suggesting that the Business Records as Evidence Act, as well as the Official Reports as Evidence Act by analogy, are not applicable in such proceedings.[2]

The latter interpretation of the holding in *Tims, supra,* is unacceptable for several reasons. As pointed out by this court in *Williamson Heater Co.* v. *Radich* (1934), 128 Ohio St. 125, and *State* v. *Nickles* (1953), 159 Ohio St. 353, 359, the holding of the syllabus must be read and interpreted in conjunction with the corresponding facts of the case. The *Tims* case only involved the admissibility of hospital records; it clearly did not set forth a general rule proscribing the introduction in evidence of all documents that may qualify as a business record. This conclusion is buttressed by the fact that this court, in *State* v. *Kehn* (1977), 50 Ohio St. 2d 11, specifically held that bank deposit slips, offered as circumstantial evidence of a coin payoff following a

---

[2]Appellant cites the following language in *State* v. *Tims* (1967), 9 Ohio St. 2d 136, 138, to support her contention that the Business Records as Evidence Act can never be employed in a criminal proceeding.

"This right of confrontation includes the right of cross-examination of the person who is the actual witness against him. If applicable in a criminal case, the Business Records as Evidence Act denies him such right. The act permits the introduction of evidence in the form of records without requiring the presence of the person who actually made the examination. It is this person who is the actual witness against the accused, not the custodian, and it is this witness that the accused has the right to cross-examine to determine his qualifications and to determine whether the tests were made properly."

vending machine company burglary, were properly qualified under R. C. 2317.40 as admissible in evidence. In *Colvin, supra* (19 Ohio St. 2d 86), at page 91, the court rejected the contention that evidence admitted under the Official Reports as Evidence Act violated the accused's right of confrontation.

Furthermore, decisions of the Supreme Court of the United States have repeatedly indicated that the right of confrontation is not one without well-recognized exceptions. *Snyder* v. *Massachusetts* (1934), 291 U. S. 97, at 107; *Pointer* v. *Texas* (1965), 380 U. S. 400, at 407; *Chambers* v. *Mississippi* (1973), 410 U. S. 284, at 288-299. In *Dowdell* v. *United States* (1911), 221 U. S. 325, at 330, the Supreme Court recognized that "[d]ocumentary evidence to establish collateral facts, admissible under the common law, may be admitted in evidence" in a criminal trial.

In determining what evidence is admissible in a criminal trial as an exception to the hearsay rule irrespective of the accused's basic right of confrontation, the Supreme Court has looked to "indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Dutton* v. *Evans* (1970), 400 U. S. 74, at 89. As the Supreme Court stated in *Chambers, supra*, at page 295, while "* * * denial or significant diminution [of an accused's right of confrontation] calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined [citation omitted] * * *," "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."

This case-by-case approach in resolving the apparent conflict between the Confrontation Clause and the hearsay exceptions recognizes that the former was "* * * not [designed] to serve as a rigid and inflexible barrier against the orderly development of reasonable and necessary exceptions to the hearsay rule" (*Kay* v. *United States* [C. A. 4, 1958], 255 F. 2d 476, at 480; see, also, 5 Wigmore on Evi-

dence, 155, Section 1397), but was "* * * to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.'" *Dutton, supra,* at 89. It is just such an approach this court has utilized in holding that copies of pages contained in a permanent log book are admissible in the instant proceeding.

It is important to note that we are not further expressly or implicitly holding that *all* documents qualifying under the Official Reports as Evidence Act are admissible in a criminal proceeding. As stated in *California* v. *Green* (1970), 399 U. S. 149, at 155:

"While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception."

In conclusion, the court finds that the documentary evidence *sub judice* qualifies under the Official Reports as Evidence Act pursuant to R. C. 2317.42, that the document is sufficiently reliable to warrant its admissibility in evidence despite the fact that the declarant is not present at trial, and that the holding of *Tims, supra,* is not controlling given the facts of this cause.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, W. BROWN, P. BROWN and LOCHER, JJ., concur.

CELEBREZZE, J., dissents.