THE STATE OF OHIO, APPELLEE, *v.* EMCH, APPELLANT.

(No. 5-81-34—Decided May 21, 1982.)

Mr. *Michael Dillon,* municipal prosecutor, for appellee.

Mr. *Max E. Rayle,* for appellant.

COLE, P.J. This is an appeal from a judgment of conviction and sentence of the defendant-appellant, Gary L. Emch, by the Municipal Court of Findlay for the offense of driving under the influence of alcohol. The defendant, in the court below, filed a motion to suppress the results of an intoxilyzer test given to him at the time of his arrest. When the motion was overruled by the trial court, the defendant changed his plea from not guilty to no contest, and was found guilty and sentenced. He now appeals asserting a single assignment of error, *i.e.*, that the trial court erred in overruling the motion to suppress. Three separate grounds are urged for this position.

## I

It is asserted that the evidence as to calibration of the intoxilizer was inadequate.

In *State* v. *Coon* (March 24, 1981), Logan App. No. 8-80-19, unreported, this court reviewed the history of the requirements pertaining to evidence as to calibration in such tests. The basic requirement is established by R.C. 3701.143; the judgment in *Cincinnati* v. *Sand* (1975), 43 Ohio St. 2d 79 [72 O.O.2d 44]; and the requirements of the Ohio Adm. Code 3701-53-04. After some differences on the question of how such calibration could be established, the Ohio Supreme Court in *State* v. *Walker* (1978), 53 Ohio St. 2d 192 [7 O.O.3d 368], stated in the syllabus:

"In a criminal prosecution for violation of R.C. 4511.19 or a municipal ordinance relating to driving a vehicle while under the influence of alcohol, certified copies of pages from a permanent log book maintained by a police department in accordance with regulations promulgated by the Director of Health pursuant to R.C. 3701.143 are admissible in evidence as an exception to the hearsay rule under R.C. 2317.42."

Thus, in the absence of testimony by the calibrating officer, such documents were admissible as official documents under R.C. 2317.42. This statute reads as follows:

"Official reports made by officers of this state, or certified copies of the same, on a matter within the scope of their duty as defined by statute, shall, in so far as relevant, be admitted as evidence of the matters stated therein."

Thus, there was established as to this area of evidence a recognized exception to the hearsay rule. The test report as to calibration was of course a statement out of court by one not in court introduced to prove the truth of the matter asserted. It was clear from *Walker, supra,* that the constitutional right to confrontation was not violated by the use of such documentary evidence properly authenticated. See, also, *State* v. *Spikes* (1981), 67 Ohio St. 2d 405 [21 O.O.3d 254]. Had the situation remained unchanged, there would be no doubt the calibration records would raise only an issue as to authenticity and no issue as to hearsay.

However, the Ohio Rules of Evidence became effective on July 1, 1980. Evid. R. 803 is concerned with exceptions to the hearsay rule and Paragraph 8 concerns the matter of public records and reports. This paragraph reads as follows:

"Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

The exclusion here is broad in scope. It excludes in criminal cases matters "observed by police officers" when the evidence was not offered by the defendant. Now it is quite clear a calibration test requires the testing officer to observe

and then record a reading on the tested instrument. Such being the case there is a specific exclusion from the exception pertaining to public reports of the type of evidence here involved.

The *Walker* case was in part predicated upon the provisions of R.C. 2317.42, which being prior in time must be considered to have been superseded by the provisions of Evid. R. 803 (8).

In the light of the *specific* limitation of the exception excluding in criminal cases matters observed by police officers, it could be concluded that once again calibration reports are hearsay and subject to admission under no exception to the hearsay rule irrespective of proper authentication.

*Walker, supra,* expresses a rule not necessarily predicated upon the statute. At page 197 it is stated:

"* * * In Ohio, it is not questioned that through pre-trial discovery under Crim. R. 16 the defense may obtain the name of the individual responsible for conducting the calibration test, and determine through deposition under Crim. R. 15 whether such individual utilized the proper methods in calibrating the machine. Furthermore, the defense may subpoena the official as a witness to testify at trial under Crim. R. 17 if deemed necessary. These protections adequately provide the defense every opportunity of insuring that the breath analysis machine was in proper working order when used in testing the defendant. To require as a matter of law that the officer who performed the calibration test (who perhaps has conducted several such tests as a matter of routine) testify at trial where the permanent record of the calibration tests and the results therefrom are readily available does not merit adoption by this court."

This would appear to place the exclusion on a basis independent of the statute. However, the syllabus and the opinion in its entirety appear to demand the statutory base. Since this statutory base is

removed by the later rule, we must conclude the specific language of Evid. R. 803 (8) pertaining to public records makes calibration test results hearsay and as such subject to exclusion. Furthermore, the language of the rule is quite specific in its application to the case at hand irrespective of the basis of the decision in *Walker.*

We conclude that the trial court for this reason erred in failing to grant the motion to suppress. We regret that an issue once apparently settled must be reopened but the Rules of Evidence mandate this action.

As to authentication, Evid. R. 901 provides:

"(A) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

"(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

"* * *

"(7) Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

Here we are concerned with an official record kept by the State Highway Patrol. See *Walker, supra.* Here a book was originally identified by the arresting officer as Book 26 in a series of intoxilyzer test reports, and was further identified as a book kept at the highway patrol station which the patrol was required to keep for a period of two years. Certain pages from this book were thereafter identified as

Exhibits 5, 6, 7. Thereafter apparently photocopies of these pages were substituted although the record is hazy on this point. It is admitted by counsel for appellant in argument to the trial court that the original log book was before the court. The trial court explicitly states, "We have the original."

We find the evidence was sufficient to support a finding the original log book was in fact before the court and that it was an official record properly identified by the witness. We are not then concerned with self-authentication and with certified copies but with the identification by a witness with knowledge that a document is an original report filed in an office of the highway patrol and is in fact from that office.

In *Coon, supra,* the evidence was insufficient on the face of the record to satisfy either requirement.

The assignment of error for the reasons heretofore stated is well-taken.

## II

It is objected that there was no evidence introduced to establish the officer conducting the calibration test was a senior operator.

The content of the reports in the logbook pages of which, by copy, became exhibits (Exhibits 5 and 7) are signed by officers giving their permit number and type: In the one case "sen oper" and in the other "sr op." Ample discovery procedures are available to the defendant to inquire into this issue and the designation in the official logbook to each officer as what was clearly apparent to be senior operators was sufficient under R.C. 2317.42 to constitute evidence of matters stated in a public record.

To this extent the assignment of error is not well-taken.

## III

The appellant asserts that the instrument at issue, *i.e.,* the intoxilyzer, "does not operate upon principles which are scientifically reliable and not subject to dispute or uncertainty."

The appellant produced an expert witness who challenged the dependability of the intoxilyzer as a proper testing device not as here used specifically, but as a proper mode of arriving at correct results in any situation. It is now objected that this testimony was unrefuted and hence the trial court should have rejected the test results.

The trial court was faced with what is ultimately a factual question, *i.e.,* the dependability of the intoxilyzer as a testing device. See *East Cleveland* v. *Ferell* (1958), 168 Ohio St. 298 [7 O.O.2d 6], at page 301:

"Professor Wigmore, in the Science of Judicial Proof, at page 450, said:

" '* * * since the additions made possible to our unaided senses are due to the use of instruments constructed on knowledge of scientific laws, it is plain that the correctness of the data thus obtainable must depend upon the correctness of the instrument in construction and the ability of the technical witness to use it. Hence, the following three fundamental propositions apply to testimony based on the use of all such instruments:

" 'A. *The type of apparatus purporting to be constructed on scientific principles must be accepted as dependable for the proposed purpose by the profession concerned in that branch of science or its related art.* This can be evidenced by qualified expert testimony; or, if notorious, it will be judicially noticed by the judge without evidence.

" 'B. *The particular apparatus used by the witness must be one constructed according to an accepted type and must be in good condition for accurate work.* This may be evidenced by a qualified expert.

" 'C. *The witness using the appartus* [sic] *as the source of his testimony must be one qualified for its use by training and experience.*' " (Emphasis *sic*.)

Here we are concerned with the first requirement. It is appellant's contention

his witness was uncontradicted. However, this does not commit a trier of fact to belief. Issues of credibility still exist. Moreover, the trial court had before it the uncontradicted fact that the intoxilyzer employed had been approved by the Director of Health as a device for determining the concentration of alcohol in a person's blood by breath testing.

In Ohio Adm. Code 3701-53-02 it is stated:

"(B) The following breath taking instruments are approved:

"* * *

"(4) Intoxilyzer."

The fact that this instrument has been so approved by the chief officer of the state engaged in matters of health in conformity with the direction of the legislature contained in R.C. 4511.19 is entitled to great weight and is fully sufficient to support a finding by the trial court that the instrument must be accepted as dependable for the proposed purpose by the profession concerned in that branch of science or its related art. The official approval is trustworthy evidence that the instrument has been officially considered and determined to be dependable by an officer of the state charged with that responsibility. The opinion of one expert is given in opposition. This expert testified that the basis for approval by Ohio was the "* * * acceptance by national organization, national safety council and other states of a committee recommendation that the 2100 was an average value for the ratio of alcohol in the breath and in the blood * * *," which constitutes an impressive array of favorable opinion. He states that this assumption is now questioned by "[o]ne of the, or two of the former chairmen of the National Safety Council and one of the members of the Committee." The evidence therefore was conflicting at best and the court was warranted in rejecting the motion to suppress for this reason.

Since the trial court erred in admit-

ting hearsay evidence, over objection, to establish calibration, the judgment of the trial court in this respect is reversed and the cause is remanded for further proceedings.

*Judgment reversed.*

MILLER and GUERNSEY, JJ., concur.