THE STATE OF OHIO, APPELLEE, *v.* SCHELL, APPELLANT.

(No. CA83-07-055—Decided February 21, 1984.)

*Mr. George E. Pattison,* prosecuting attorney, and *Ms. Gayle A. Walker,* for appellee.

*Messrs. Nichols, Speidel & Nichols* and *Mr. Donald W. White,* for appellant.

JONES, J. At 12:58 a.m. on March 19, 1983, Trooper Douglas McKinney of the Ohio State Highway Patrol was at the intersection of State Route 32 and old State Route 74 in the Mt. Carmel area. McKinney observed a 1976 blue Chrysler turn right onto State Route 32, screeching its tires and accelerating rapidly as it headed west along State Route 32. McKinney followed the Chrysler and eventually pulled it over.

Defendant-appellant Gregory Schell, the driver of the blue Chrysler, got out of the vehicle. Schell was unsteady on his feet, his speech was slurred, and McKinney smelled a moderate odor of alcohol on Schell's person and breath. After having Schell perform a series of coordination tests, McKinney arrested Schell for operating a motor vehicle while under the influence of alcohol.

McKinney placed Schell in his cruiser and transported him to the State Highway Patrol Office where McKinney, the holder of a senior operator's permit, conducted an intoxilyzer test on Schell. The intoxilyzer test produced a reading of .12, which indicated that Schell had a concentration of twelve-hundredths of one percent by weight of alcohol in his blood.

Schell was charged by affidavit and complaint for violating R.C. 4511.19(A)(1) and 4511.19(A)(3).[1] Schell filed a written plea of not guilty and a demand for a jury trial. A motion to quash arrest and a motion to suppress were filed and subsequently dismissed. Prior to the commencement of trial, Schell made a motion for mistrial, a motion to require the state to proceed under R.C. 4511.19(A)(1) or 4511.19(A)(3), and a motion in limine to preclude the state from presenting the breath test to the jury, all of which were overruled.

The jury found Schell guilty of violating R.C. 4511.19(A)(3), but proceeded to find him not guilty of violating R.C. 4511.19(A)(1). Schell filed his notice of appeal and offers the following assignments of error:

First Assignment of Error

"The trial court erred to the prejudice of defendant-appellant in overruling his motions to exclude the results of the intoxilyzer from evidence."

Second Assignment of Error

"The trial court erred to the prejudice of the defendant-appellant in limiting the testimony of his expert witness."

Third Assignment of Error

"The jury erred in finding the defendant-appellant guilty of violating O.R.C. § 4511.19(A)(3) since there was no evidence or instruction which would allow them to correlate the results of the intoxilyzer with the standard in the statute."

Fourth Assignment of Error

"Ohio Revised Code § 4511.19(A)(3) is unconstitutionally vague and uncertain therefore the trial court erred in not dismissing said charge upon motion of defendant-appellant."

Appellant's first assignment of error is that the trial court erred in denying his

---

[1] R.C. 4511.19 provides in pertinent part that:

"(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state if any of the following apply:

"(1) The person is under the influence of alcohol or any drug of abuse, or the combined influence of alcohol and any drug of abuse;

"* * *

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;

"* * *"

motion to exclude from evidence the results of his intoxilyzer test. This claim is based in part on appellant's assertion that the state failed to follow the procedures established by the Department of Health regarding the implementation of intoxilyzer tests.

R.C. 3701.143 provides that, "[t]he director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath, * * * in order to ascertain the amount of alcohol in a person's blood." The intoxilyzer has been approved as an instrument for testing a person's breath to measure the subject's blood alcohol concentration. Ohio Adm. Code 3701-53-02(B)(2). "Breath samples shall be analyzed according to instructions * * * issued by the director of health." Ohio Adm. Code 3701-53-02(A). Ohio Adm. Code 3701-53-04 provides that:

"(A) *Breath testing instruments must be calibrated* no less frequently than once each week by a senior operator using appropriate solutions of ethyl alcohol, and *using methods and techniques for calibration recommended by the manufacturer of the calibration instrument or the director of health.*

"(B) Distillation, enzymatic, and gas chromatographic methods must be calibrated with known concentrations of ethyl alcohol each day tests are run, by the laboratory director or under his general direction by a laboratory technician.

"(C) Results of tests for calibration shall be kept for not less than three years in the record book required by paragraph (A) of rule 3701-53-01."[2]

Appellant's position is that when the above-mentioned administrative rules are examined in light of Instruction No. 009, issued by the director of health and dated March 16, 1983, it is evident that the state failed to follow the proper procedures in conducting appellant's intoxilyzer test. Directive No. 6 of Instruction No. 009 states that "[c]alibration solutions are to be stored in their original screw-top container [*sic*], under refrigeration, while not in use." The evidence at trial indicated that a portion of the calibration solution was removed from the original container and placed in a simulator jar to be used for simulation tests in order to calibrate the intoxilyzer. These calibrations are conducted to ensure that the machine is in proper working order and will produce accurate results. After placing a portion of the calibration solution in the simulator jar, the remaining solution was returned to the refrigeration unit. The portion used to calibrate the machine was never returned to the refrigerator, but remained in the simulator jar adjacent to the intoxilyzer and was repeatedly used for subsequent calibration tests.

Trooper McKinney testified that when the portion of the solution used in the simulator failed to produce results within the specified target range for that particular solution, the portion was discarded and a fresh sample was obtained from the base unit and used to calibrate the machine. The state argues that despite the fact that the calibration solution was not refrigerated after being used to calibrate the machine, the calibration procedure used by the highway patrol complied with the rules and instruction of the director of health. The state specifically directs our attention to Directive No. 3 of Instruction No. 009 which reads:

"Calibration of the breath testing instrument is valid when the reading of the calibration test is at target value ± 0.005 g/210 L, and that calibration solution has not been in use for more than three (3)

---

[2] Ohio Adm. Code 3701-53-04 which became operational on March 16, 1983, and was in effect on March 19, 1983, was an emergency rule, effective for ninety days, adopted pursuant to R.C. 119.03. The present version of Section 3701-53-04, effective June 13, 1983, is, except for minor changes, essentially the same as the emergency rule quoted above.

months from its date of first use. Date of first use for the calibration solution and its identification data are to be recorded on the breath test report form."

Since the non-refrigerated solution was used to calibrate the intoxilyzer only as long as the calibration results fell within the variance range and was subsequently replaced by fresh solution when it failed to produce a result within the acceptable range, the state's position is that the failure to place the solution under refrigeration after using it to calibrate the intoxilyzer does not violate the instructions and directions of the director of health, but rather complies with the requirements relating to proper calibration of the machine.

The case at bar involves a conviction pursuant to Ohio's new drunk driving law (S.B. 432, effective March 16, 1983) as codified in R.C. 4511.19. The new law, like former R.C. 4511.19, makes it a violation for an individual to operate a vehicle while under the influence of alcohol. The former law provided that evidence reflecting a concentration of ten-hundredths of one percent or more by weight of alcohol in an accused's blood as shown by a chemical analysis of the accused's breath or other bodily substance raised a presumption that the accused was under the influence of alcohol. Former R.C. 4511.19 (B). This statutory presumption was not conclusive, but could be rebutted by other evidence which would prove that a defendant was not necessarily under the influence of alcohol even though the chemical test result was above the ten-hundredths of one percent level. See *State v. Myers* (1971), 26 Ohio St. 2d 190 [55 O.O.2d 447].

The new law does not utilize the statutory presumption of intoxication based on the results of chemical analysis conducted on an individual's bodily substance to determine alcohol concentration. Rather, the present version makes it a violation of the statute to operate a vehicle when the alcohol concentration of the accused's bodily substance equals or exceeds the percentage designated in the statute regardless of whether the accused was under the influence of alcohol. R.C. 4511.19(A)(2), (3) and (4).

It is interesting to note that the jury found appellant not guilty of operating a vehicle while under the influence of alcohol but still found him guilty of operating the vehicle while having a bodily alcohol concentration in excess of the statutory limit. The ten-hundredths of one percent concentration, in and of itself, would not have amounted to a violation of former R.C. 4511.19, but does constitute a violation under the new law. Thus, a defendant can be in violation of R.C. 4511.19, even though he is not under the influence of alcohol, if he equals or exceeds the bodily alcohol concentration levels enumerated in the statute.

It is our position that since the new drunk driving law creates this additional violation and imposes culpability for a standard which previously only raised a presumption of criminal conduct it is necessary that officials explicitly follow the rules, instructions and guidelines established by the director of health for administering such blood alcohol concentration tests. Thus, the failure to refrigerate the calibration solution while not in use violated the methods and techniques of the director of health for calibrating breath analysis machines. Consequently, we question the validity of the results of appellant's intoxilyzer test. Since such results were susceptible to error, we hold that it was improper to admit those results into evidence and appellant's argument that they should have been excluded is well-taken.

We are mindful of the problems and dangers associated with drunk driving, not only in Ohio but throughout the nation as well. There are well-founded safety and public policy considerations for adequately controlling those individuals who abuse the privilege of driving and endanger the lives and property of themselves and

others. But since an individual charged under the new law faces serious consequences solely dependent upon the results of a chemical analysis test, it becomes incumbent upon those officials administering these tests to follow the established procedures to ensure that accurate and reliable test results are always obtained.

Appellant also claims that the intoxilyzer was improperly calibrated since only one calibration solution was used in the calibration tests. As support for this position appellant cites Ohio Adm. Code 3701-53-04(A) which states that breath testing instruments are to be calibrated using appropriate "solutions" of ethyl alcohol. By using only one solution to calibrate the machine, appellant alleges that this code section, requiring the use of solutions, was not complied with. We disagree.

The trial court held that this administrative code section used the plural context of "solution" to correspond to the plural context of "breath testing machine." Several breath testing machines have been approved for use in Ohio. Ohio Adm. Code 3701-53-02(B). Thus, each of the various models that are used are required to be calibrated by an appropriate solution. We agree with the trial court's determination that each breath testing machine is not required to be calibrated by the use of multiple solutions.

Finally, appellant claims that the trial court erred in admitting into evidence an affidavit of a chemist from the Ohio State Highway Patrol Crime Laboratory. The affidavit's contents revealed that the calibration solution used by the highway patrol to calibrate the intoxilyzer used on appellant contained ethyl alcohol which would produce a reading of .107% with a variance of .005%. At trial, this information was used in conjunction with calibration results to indicate that the machine used on appellant was correctly calibrated and in proper working order.

Appellant claims that the affidavit was hearsay and inadmissible. The state takes the position that the affidavit was admissible, citing *State* v. *Walker* (1978), 53 Ohio St. 2d 192 [7 O.O.3d 368]. In *Walker*, the Supreme Court held that a certified copy of an entry from a police calibration log book was admissible. The court held that certified copies of the log book would qualify as an exception to the hearsay rule under the official report rule set forth in R.C. 2317.42.

*Walker, supra,* was decided prior to the adoption of the Ohio Rules of Evidence. Evid. R. 803 reads, in part, as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant,* unless the sources of information or other circumstances indicate lack of trustworthiness.

"* * *" (Emphasis added.)

Unlike R.C. 2317.42, which was the basis for the decision in *Walker, supra,* Evid. R. 803(8) provides that public records and reports of matters observed by police officers or other law enforcement officials are not admissible in criminal cases, unless offered by the defendant. In addition, the court in *Walker* held that the defense had the protection of being able to subpoena the author or custodian of the record as a witness to testify at trial if deemed necessary. *Walker, supra,* at 197.

Turning to the case at bar, the affidavit of Sgt. Keckley was offered into evidence by the state, not by appellant. In

addition, the record indicates that defense counsel had subpoenaed Keckley well in advance of trial, but that on the day of trial, the court was presented with a note from Keckley' stating that he would not be attending the trial, thereby denying appellant one of the very protections specified in the *Walker* case. Since appellant did not seek to introduce the affidavit and was also denied the opportunity to examine the affiant whom he had subpoenaed, the affidavit did not meet the exception to the hearsay rule as set forth in Evid. R. 803(8). For these reasons, the first assignment of error is well-taken and is hereby sustained.

Appellant's second assignment of error claims that the trial court improperly limited the testimony of appellant's expert witness. The testimony proffered by appellant pertained to the expert's opinion on the matters of calibration, proficiency testing and McKinney's observation of appellant prior to administering the intoxilyzer test. The state's objections to the testimony were sustained by the trial court on the basis that the opinions were predicated on hypothetical situations that could have occurred and that there was not enough evidence to indicate that they did occur in the case at bar.

Appellant relies on Evid. R. 702 which permits opinion testimony by a witness who is qualified as an expert. While we do not question the qualifications of appellant's expert, the opinion testimony offered by this or any expert must conform with Evid. R. 703 which states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

Ohio case law is in accord. In *State* v. *Chapin* (1981), 67 Ohio St. 2d 437, 442 [21 O.O.3d 273], the Supreme Court, citing *Burens* v. *Indus. Comm.* (1955), 162 Ohio St. 549 [55 O.O. 436], held that " '* * * "[t]he hypothesis upon which an expert witness is asked to state an opinion *must*

be based upon facts within the witness' own personal knowledge or upon facts shown by other evidence." ' " (Emphasis *sic.*) See, also, *Kraner* v. *Coastal Tank Lines* (1971), 26 Ohio St. 2d 59 [55 O.O.2d 68]. Thus, Evid. R. 703 requires that the "opinion testimony by an expert witness must be based upon facts within the witness' own personal knowledge or upon facts shown by other evidence." See *Price* v. *Daugherty* (1982), 5 Ohio App. 3d 157, 159.

Based on these principles, we feel that the trial court was correct in limiting the testimony of appellant's expert witness and prohibiting the expert's opinion based on hypothetical matters not introduced into evidence. Accordingly, the second assignment of error is overruled.

In the third assignment of error, appellant argues that the jury had no evidence or instructions which allowed them to correlate the results of appellant's intoxilyzer test with the standard enumerated in R.C. 4511.19(A)(3). The jury found appellant guilty of violating R.C. 4511.19(A)(3), which meant that the jury had to find that appellant had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath.

At trial, Trooper McKinney testified to the following:

"Q. And would you give the test results of this Defendant as the percentage of blood alcohol by weight with the Defendant's blood?

"MR. WHITE: Objection.

"THE COURT: Overruled.

"A. The result was .120, *twelve hundredths of one percent blood alcohol by weight.*" (Emphasis added.)

Appellant claims that this testimony failed to explain or inform the jury as to how the finding of a concentration of twelve-hundredths of one percent blood alcohol by weight correlated to a concentration of ten-hundredths of one gram by weight of alcohol per two hundred ten liters of breath. Thus, the jury was left

without any guidelines to determine if appellant violated R.C. 4511.19(A)(3). We disagree.

Ohio Adm. Code 3701-53-02(A) provides in part that:

"Breath samples of deep lung (alveolar) air shall be analyzed with instruments specifically designed for the analysis of breath. *Results expressed as BAC* (blood alcohol concentration) *based on the deep lung air to blood ratio of 2,100:1 are equivalent to grams of alcohol per two hundred ten liters of breath (deep lung).* * * *" (Emphasis added.)

The intoxilyzer used in the case at bar is an instrument which utilizes infrared light to measure the breath alcohol content of a breath sample. This percentage is then converted into a figure representing the blood alcohol concentration.[3] The digital readout produced by the machine reflects the subject's blood alcohol concentration. In the case at bar, McKinney testified that appellant tested .12, which meant that appellant had a concentration of twelve-hundredths of one percent by weight of alcohol in his blood. Based on the administrative code section cited above, appellant's result of .12 was equivalent to the amount of grams of alcohol per two hundred and ten liters of his breath.

This point was established in McKinney's testimony when the following exchange occurred:

"Q. How does the percentage of blood alcohol by weight correlate to a concentration by grams of weight of alcohol to two hundred and and [sic] ten liters to a person's breath?

"* * *

"A. *The results are expressed as B.A.C. or blood alcohol concentration* * * *. It has a blood ratio of twenty one hundred to one. *It is equivalent to grams*

---

[3] For a more detailed discussion of the operation of the intoxilyzer, see *State* v. *Brockway* (1981), 2 Ohio App. 3d 227, 229, fn. 4.

*of alcohol per 210 liters of breath or deep lung air* * * *." (Emphasis added.)

Although the intoxilyzer results were not expressed in terms of grams per two hundred and ten liters of breath, McKinney's testimony sufficiently explained to the jury the correlation between blood alcohol and breath alcohol concentrations as they related to the intoxilyzer results. This enabled the jurors to render an informed and intelligent verdict on the issue of appellant's violation of R.C. 4511.19 (A)(3). The third assignment of error is without merit and is hereby overruled.

Appellant's fourth assignment of error is premised upon the claim that R.C. 4511.19(A)(3) is unconstitutional and that the statute should be declared void for vagueness in that it fails to sufficiently define the prohibited course of conduct as to permit a person of ordinary intelligence to understand what constitutes lawful or unlawful conduct under the statute.

Errors allegedly arising during the course of trial, which are not brought to the attention of the trial court by objection or otherwise are waived and may not be raised for the first time on appeal. *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 123]. This general rule is applicable in those instances where the claimed error is one of a constitutional nature. Constitutional questions cannot be initially raised in the court of appeals where they have not been previously urged at the trial court level. *State, ex rel. Specht,* v. *Bd. of Edn.* (1981), 66 Ohio St. 2d 178 [20 O.O.3d 191]. See, also, *Atkins* v. *Walker* (1979), 65 Ohio App. 2d 136 [19 O.O.3d 95].

Although appellant did move for a dismissal on the R.C. 4511.19(A)(3) charge, his motion was not founded on the argument that this particular code section was unconstitutionally void for vagueness. It is on appeal that appellant first raises the question of the constitutionality of R.C. 4511.19(A)(3). By not raising the constitutionality of R.C. 4511.19(A)(3) at the trial court level, appellant has failed to

properly preserve the error for appellate review. Accordingly, the fourth assignment of error is overruled.

Judgment reversed and defendant discharged.

*Judgment reversed.*

HENDRICKSON, P.J., and KOEHLER, J., concur.