THE STATE OF OHIO *v.* GLACKEN.

(No. 83 TRC 47714A & B—Decided April 7, 1984.)

Hamilton County Municipal Court.

*Mr. Patrick Keith Dunphy,* for plaintiff.

*Mr. Merlyn D. Shiverdecker,* for defendant James E. Glacken.

PAINTER, J. This matter came on to be tried to the court, defendant being charged under R.C. 4511.19(A)(1) and (A)(3). After presentation of the evidence, the court granted a Crim. R. 29 motion for acquittal as to the R.C. 4511.19(A)(1) charge, *i.e.,* driving under the influence of alcohol.

Both parties agreed that the sole remaining issue in the case is whether or not a certain document is admissible. If so, the defendant having tested above .10 on the intoxilyzer machine and all of the elements being proved, he would be guilty of violating R.C. 4511.19(A)(3). As part of the foundation for the admission of said intoxilyzer test, the state presented Exhibit 4 (see Appendix), which is entitled "Ohio Department of Health, Alcohol Testing, Approval & Permit Program, Report of Analysis: Calibration Solution"; or the "batch and bottle affidavit." The defendant objects to the admission of this document, claiming that it cannot be admitted under the Rules of Evidence. Defendant cites *State* v. *Zimmerman* (Feb. 27, 1984), Hamilton Cty. M.C. No. C 83 TRC 41140A&B, unreported; *State* v. *Emch* (1982), 7 Ohio App. 3d 7; and *State* v. *Schell* (Feb. 21, 1984), Clermont App. No. CA 83-07-055, unreported. The state relies upon *State* v. *Walker* (1978), 53 Ohio St. 2d 192 [7 O.O.3d 368].

Evid. R. 803(8) provides that the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the source of the information or other circumstances indicate lack of trustworthiness."

The state's reliance on the *Walker* case is somewhat misplaced, since the *Walker* case was decided prior to the adoption to the Ohio Rules of Evidence, under the old R.C. 2317.42. Since R.C. 2317.42 is superseded by the Evidence Rules, the specific holding in *Walker* is questionable. *State* v. *Emch, State* v. *Zimmerman* and *State* v. *Schell, supra.* It should be noted, however, that the *Emch* and *Zimmerman* cases dealt with *police logs,* not the batch and bottle affidavit.

The state also contends that the document might be admissible under Evid. R. 902(1), which states as follows:

"Domestic public documents under

seal. A document bearing a seal purporting to be that of the United States, or any State, * * * or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution."

Since the document in question here is signed by the Director of Health, and has a seal of the Ohio Department of Health, the state contends that that makes it *per se* admissible. To so state is of course to misapprehend the concepts of authentication and admissibility. Evid. R. 902 applies only to authentication as a *condition precedent* to admissibility. Evid. R. 902 only states that no additional evidence that the document is what it purports to be need be shown before the document is accepted as what it represents itself to be. However, the issue of authentication has nothing whatsoever to do with the admissibility of the statements contained therein. This may be easily shown by reference to Evid. R. 902(6), which also states, "[p]rinted materials purporting to be newspapers or periodicals * * *" are self-authenticating under that rule. That simply means that a printed newspaper may be taken to be what it says it is, not, however, that all the *statements contained therein* are true. To assert such a proposition would be ludicrous on its face. No one is seeking to require any further *authentication* of the document, the defendant is questioning the admissibility of the statements contained therein.

In *State* v. *Schell, supra,* the court of appeals excluded a similar document for the reason that it was in the form of an affidavit of a chemist from the Ohio State Highway Patrol Crime Laboratory. Obviously, the clear exclusion of "matters observed by police officers and other law enforcement personnel" in Evid. R. 803(8) applies, and the document in that case could not be offered by the state. Here, however, the document in question was prepared by the Ohio Department of Health, pursuant to a duty to do so, not by law enforcement personnel.

Some of the discussion concerning the "public records" rule, Evid. R. 803(8), is confused by the similarity of this rule to the "shopbook" rule, Evid. R. 803(6). While some of the underlying principles are the same, the rules are substantially different. This difference is best set out in Weissenberger, Ohio Evidence (1982), Section 803.104, which states, in part, at 86-87, as follows:

"The foundational conditions for evidence introduced pursuant to Rule 803(8) are minimal. Unlike the business records exception of Rule 803(6), the official records exception does not require the testimony of the custodian or other qualified witness as a pre-condition to admissibility. Rather, the official records exception often requires no foundation witness at all, since the self-authentication provisions of Rule 902 will usually obviate the necessity for live foundational testimony. Similarly, unlike the business records exception, Rule 803(8) may be invoked even where the record was not created contemporaneously with the event or transaction in question. And, at least with respect to subdivision (a), the record need not even qualify as one which is routinely kept. Subdivision (b), on the other hand, requires merely that the matter contained in the report be one which was observed and recorded pursuant to an imposed legal duty, although it is difficult to envision satisfying these conditions absent some type of routine or continuing duty.

"Under pre-Rule practice the official, *i.e.,* the declarant, must have possessed firsthand knowledge of the underlying event or transaction, although it was generally deemed sufficient if the record was based upon information received from a subordinate with personal knowledge. Rule 803(8) is conspicuously silent in this regard, although nothing in Rules 803 and 804 should be construed to dispense with the requirement of personal knowledge by the declarant absent an express contrary indication, and courts should interpret Rule 803(8) in accordance with the fundamental purpose of

the hearsay rule in excluding untrustworthy evidence. The issue of lack of personal knowledge arises more frequently in the federal system in light of the special provision for investigative reports under Federal Rule 803(8)(C). Under the Ohio Rule, which omits subsection (C) of the cognate Federal Rule, investigative reports are admissible only to the extent that they qualify as setting forth the activities of the agency (subdivision (a)), or matters observed and reported pursuant to a legal duty (subdivision (b)). Consequently, where the Ohio Rule is satisfied, personal knowledge is almost always present because the official could not fulfill his duty to perform or supervise a matter, except insofar as it is done by him or by a subordinate with personal knowledge. By virtue of the limited nature of the Ohio Rule, therefore, the problem of firsthand knowledge is less acute than under the more expansive federal practice. Under any circumstances, however, the report or record must be such that, given the nature of the document, the essential guarantee of trustworthiness is either inherently satisfied or is subject to circumstantial verification. And most notably, nothing in the Rule alters pre-Rule practice regarding trustworthiness and firsthand knowledge." (Footnotes omitted.)

Further, the state obviously seeks to admit the document in question under Evid. R. 803(8)(a) concerning the activities of the office or agency in question, here the Ohio Department of Health. This is to be distinguished from (8)(b), consisting of matters observed by the public department under a duty to report. Here the duty is to conduct the activities of the agency directly, that is, to test the calibration solution. Professor Weissenberger disposes of the issue quite clearly in Sec. 803.105 of his treatise, *supra,* at 87-89, as follows:

"Subdivision (a) of Rule 803(8) permits proof of the activities of a public office or agency by means of its records. *Foundational requirements for this excep-* *tion are minimal, and where the record is properly authenticated pursuant to Article IX, it is assumed that responsible persons, acting in the course of their official duties, prepared and maintained accurate entries based upon reliable information. Further, records offered under this subdivision are not subject to any use restrictions, i.e., they may be offered as proof of the matter stated in the record against any party, in civil and criminal cases alike.*

"The purpose of subdivision (a) is to admit those records involving the simplest and least controversial application of the doctrine, namely, those containing simple factual assertions regarding the function of the official agency. Examples of evidence admissible as proof of the activities of official agencies include: accounting records of governmental agencies; dockets and journal entries of courts, legislative bodies and administrative tribunals; certificates of title, registry, death and birth; records of licensing agencies; and records of deeds and conveyances. Often, records of this sort are arguably also within the scope of subdivision (b). Nevertheless, due to the simple and factual nature of these records, and their focus upon the *internal* function of the relevant agency, the risk of inaccuracy is greatly diminished, and thus they qualify for admission under subdivision (a). This qualification avoids the restrictions of subdivision (b) which operate in criminal proceedings." (Emphasis added in part. Footnotes omitted.)

Professor Weissenberger cites, in the above section, *State* v. *Walker, supra,* especially for the position that the Confrontation Clause of the United States Constitution is not violated by the admission of this type of evidence. While the *Walker* case is pre-rule, the rationale, if not the specific holding, still applies.

It must be further noted that the foregoing applies specifically to the factual matters concerning the activities of the agency. It does *not* apply to investigative reports, nor to matters simply observed and reported by the agency,

which would come under subdivision (b) of the rule, and we make no comment upon that section, since it does not apply to the instant case.

There is one additional consideration in the admission of this type of document. Both the "shopbook" rule, Evid. R. 803(6), and the "public record" rule, Evid. R. 803(8), contain a "trustworthiness" clause which authorizes the trial court, in the exercise of discretion, to exclude any document which it does not believe to be sufficiently reliable. This discretion is necessary to ensure that a defendant's right to confront witnesses against him guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution are not violated. There is not, however, an absolute right to confront witnesses on purely preliminary or collateral facts, so long as there are sufficient "indicia of reliability" present in the proffered material. *Dutton* v. *Evans* (1970), 400 U.S. 74, at 89. *State* v. *Walker, supra,* at 199. Though this court would not hesitate to exercise such discretion in the proper case, we can see no reason for the Ohio Department of Health to fail to do its duty in providing proper test solutions to be used in the intoxilyzer machine. Considering that the persons performing the duties in the Ohio Department of Health would be subject to subpoena in the state of Ohio, were any legitimate question to be raised as to the contents of the solution or methods employed in the agency's procedures, we see no reason to rule out the document on "untrustworthiness." To do so would undermine the reason for the rule, and require state officials to often appear in court to testify on such matters, which would promote neither justice nor judicial economy.

This court is mindful of the language in the *Schell* case, *supra* at 8-9, that holds the state to a strict compliance with all procedures concerning the intoxilyzer machine "since an individual charged under the new law faces serious consequences solely dependent upon the results of the chemical analysis test, it becomes incumbent upon those officials administering these tests to follow the established procedures to ensure that accurate and reliable test results are always obtained." We certainly agree with that reasoning, but we do not believe that it applies to this particular document in this particular case. It must be remembered that the document in question herein is the "batch and bottle affidavit," which only certifies that the test solution of ethyl alcohol in distilled water is a proper concentration, and, when used correctly, will produce scientifically accurate results in the intoxilyzer machine — the state must still establish that all of the other prerequisites to the admission of the intoxilyzer results have been complied with, which, in this case, it has. Surely, the certification of the solution is a preliminary or collateral matter.

Therefore, we conclude that the state's Exhibit 4 is admissible in this case, and it is admitted. This court's decision is in no way in conflict with the *Emch, Schell,* or *Zimmerman* cases, *supra.* The *Schell* case concerned a "batch and bottle affidavit" prepared by law enforcement personnel, not by the Ohio Department of Health; *Emch* concerned "log books" of intoxilyzer calibration done by law enforcement officers — both specifically excluded by Evid. R. 803(8). The *Zimmerman* case, as we read it, did not reach the specific issue decided herein.

For all the foregoing reasons, defendant's objection to the admission of the "batch and bottle affidavit," State's Exhibit 4 (Appendix hereto), is overruled. By prior agreement the issue of the admissibility of this document was reserved until all the evidence was heard. Therefore, the admission of the document necessitates a guilty finding by this court, since all the elements of R.C. 4511.19 (A)(3) are proved by the state beyond a reasonable doubt.

*Defendant guilty.*