This is a drug case that involved a series of telephone calls between a confidential informant working for narcotics officers in Cincinnati and three drug dealers in Texas. Claudia Alfaro was the confidential informant. She pretended that she wanted to purchase marijuana and cocaine. Rafael Alvarado and Manuela Alvarado, who were a married couple, and defendant-appellant Jose Dominguez were the drug dealers in Texas. Dominguez — who referred to himself as "Luther" — was the supplier of the drugs.
The conversations initially resulted in a shipment of marijuana from Mr. and Mrs. Alvarado to Alfaro. Later, Mr. and Mrs. Alvarado agreed that Alfaro's "cousin" would meet them in McAllen, Texas, to pay for the marijuana and to negotiate the sale of two kilos of cocaine. That "cousin" was actually Drug Enforcement Administration agent Noemi Guzman.
On July 3, 1995, Guzman met Mr. and Mrs. Alvarado at a Denny's restaurant in McAllen. Dominguez was also with them. At that meeting, the parties discussed the sale of cocaine, and Mrs. Alvarado gave Guzman a sample of the cocaine. Also, at that meeting, Guzman called Cincinnati and had the dealers talk with Alfaro. When Dominguez spoke with Alfaro, they further negotiated the terms of the sale.
The three drug dealers were arrested in the parking lot of the restaurant. Dominguez was indicted in the Hamilton County Court of Common Pleas for aggravated trafficking in cocaine, in violation of R.C. 2925.03(A)(10), which then provided, "No person shall knowingly * * * [s]ell or offer to sell a controlled substance in an amount equal to or exceeding one hundred times the bulk amount." A jury found him guilty, and he was sentenced to imprisonment for twenty years to life. He now appeals his conviction and sentence, asserting three assignments of error.[1] We reject each assignment and affirm the trial court.
 I. FIRST ASSIGNMENT: MARIJUANA EVIDENCE
In his first assignment, Dominguez asserts that the trial court erred by admitting testimony regarding the initial shipment of marijuana to Alfaro. He explains that, although Mr. and Mrs. Alvarado were indicted for trafficking in marijuana, he was not. Rather, he was only indicted for trafficking in cocaine. Thus, he claims that he was unfairly prejudiced when evidence regarding trafficking in marijuana was introduced in his case.
Under Evid.R. 404(B), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." But such "other-acts" evidence may be admissible for other purposes.[2] These permissible purposes might include using the evidence to show the defendant's involvement in a drug-dealing operation.[3]
In the recent case State v. Johnson, for instance, an appeals court affirmed a police officer's convictions for obstruction of justice, dereliction of duty, and disclosure of confidential information for her involvement in a crack-cocaine operation with a drug dealer.[4] (The police officer had also been originally charged with complicity in drug trafficking, but she was not convicted for that offense.[5]) At trial, the state introduced into evidence various items that had been seized from the car and home of the drug dealer.[6] The police officer argued that the court should not have admitted these items — which included drugs, money, guns, a police badge marked "friend," and police property slips — because they were not probative of any criminal conduct on her own part.[7] But the appeals court held that the trial court had not erred by admitting that evidence.[8] The appeals court based this holding on the fact that the evidence helped establish a connection between the police officer and the drug dealer.[9]
Here, the state based its case on the series of telephone conversations between Alfaro and the drug dealers in Texas, which culminated in the July 3, 1995, arrests at Denny's. During these conversations, the parties discussed the sale of both marijuana and cocaine. Alfaro spoke with Dominguez and learned that he was the supplier of the drugs. When the shipment of marijuana was sent to Alfaro, this provided the basis for the "sting" operation that occurred at Denny's: it created the opportunity for Alfaro's "cousin" to meet the dealers and further discuss a sale of cocaine. In this respect, evidence regarding the marijuana was necessary for the jury to understand the context of the investigation that led to Dominguez's arrest. Without that evidence, which was closely intertwined with the offer to sell cocaine, the state's opportunity to connect Dominguez with the crime would have been substantially weakened. Like the Johnson case, where evidence seized from the drug dealer was used to connect him with the police officer, the marijuana evidence here was necessary to show Dominguez's complicity with Mr. and Mrs. Alvarado's drug-dealing operation. Thus, we hold that the trial court did not err when it concluded that the probative value of the marijuana evidence was not substantially outweighed by the danger of unfair prejudice.[10] We reject Dominguez's first assignment.
 II. SECOND ASSIGNMENT: SUFFICIENCY OF THE EVIDENCE
Dominguez's second assignment involves Crim.R. 29(A) motions for acquittal that he made at trial. Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence, viewed in the light most favorable to the state, is such that any reasonable trier of fact could have found the defendant guilty.[11] Dominguez argues that no reasonable trier of fact could have found him guilty. He advances three arguments in support of that position.
His first argument is that there was insufficient evidence to connect him with trafficking in cocaine. He bases this argument on the fact that Alfaro was in Ohio, while he was in Texas, and that Alfaro never saw him in person. But Alfaro's testimony was corroborated by the testimony of Guzman, the DEA agent who met Dominguez in person at the Denny's in Texas. When Dominguez met Guzman, he called himself "Luther," just as he had done on the telephone with Alfaro. Also, Alfaro testified that when she spoke with Dominguez on the telephone while he was at Denny's, she recognized his voice from her earlier conversations with him. Under these facts, we conclude that there was sufficient evidence to connect Dominguez with the crime.
Dominguez's second argument is that Hamilton County should not have had jurisdiction over this case because the crime occurred in Texas. But criminal-law jurisdiction in Ohio is very broad. Under R.C. 2901.11 — which is designed to permit the broadest possible jurisdiction over crimes committed in or affecting Ohio[12] — a person is subject to criminal prosecution here if "[h]e commits an offense under the laws of this state, any element of which takes place in this state."[13] In a drug-trafficking case, this court has held that an offer to sell drugs over the telephone to a person in Ohio was sufficient to establish jurisdiction here, even though the person offering to sell the drugs was out of the state.[14]
Here, Alfaro was in Cincinnati at all times that she spoke with Dominguez over the telephone, including on July 3, 1995, when Dominguez spoke with her from Denny's. There is ample evidence in the record that Mr. and Mrs. Alvarado were aware that the cocaine that they wanted to sell to Alfaro would be sent to her in Cincinnati. It is reasonable to assume that Dominguez, who supplied the drugs and who apparently worked closely with Mr. and Mrs. Alvarado, was also aware of the drugs' intended destination. Thus, we conclude that there was sufficient evidence for Ohio — and Hamilton County — to assert its broad jurisdiction over this crime.
Dominguez's final argument is that he did not "offer to sell" cocaine as required under R.C. 2925.03. The phrase "offer to sell" has been defined in the following way: "to declare one's readiness or willingness to sell a controlled substance or to present a controlled substance for acceptance or rejection."[15] To determine if there has been an offer to sell, a court should look to the totality of the circumstances, including the dialogue and course of conduct of the defendant.[16]
A person can offer to sell drugs without actually transferring them to a buyer.[17] Also, a supplier — or one who knowingly transfers or offers to transfer drugs — can fall under the definition.[18]
Here, Dominguez was identified as the person who supplied drugs to Mr. and Mrs. Alvarado. These drugs included cocaine. Dominguez was present with Mr. and Mrs. Alvarado at the Denny's in Texas when Guzman was given a sample of cocaine and when the sale of cocaine was negotiated. At the Denny's, Dominguez actually spoke with Alfaro on the telephone and further negotiated the sale of cocaine. Under the totality of the circumstances, we hold that there was sufficient evidence to conclude that Dominguez offered to sell cocaine as required under R.C. 2925.03. His second assignment is overruled.
 III. THIRD ASSIGNMENT: PRIOR-CONVICTION EVIDENCE
Dominguez's third assignment involves his prison sentence. Under the version of R.C. 2925.03 in effect when Dominguez's crime occurred, the required prison term for a defendant convicted under division (A)(10) was fifteen years to life.[19] But if the defendant had previously been convicted of a felony drug offense, then the required term was twenty years life.[20] Dominguez argues that he was improperly sentenced to twenty years to life because the court improperly admitted evidence showing that he had a prior drug conviction.
He first claims that documents showing the prior drug conviction were not properly authenticated. Under Evid.R. 902, which governs self-authentication, extrinsic evidence of authenticity is not required for certified copies of public records.[21] For domestic public records, the certification will be sufficient if it bears an official seal and a signature purporting to be an attestation or execution.[22] The certification "may be made by any public officer having a seal of office and having official duties in the political subdivision in which the record is kept, authenticated by the seal of his office."[23]
Here, Dominguez's prior drug conviction was evidenced by documents from his record in a 1993 case in the District Court of Brooks County, Texas, where he pleaded guilty to a felony charge of marijuana possession. Those documents — which were portions of a public record — had a certification with the seal of the District Court of Brooks County, Texas, and the original signature of a court deputy. There was no evidence that the documents had been tampered with or forged. Under these facts, we hold that the evidence regarding Dominguez's prior conviction was contained on properly certified, self-authenticating documents.[24] The trial court did not err in admitting that evidence.
Dominguez also argues that the trial court erred by allowing the state to admit the evidence of his prior conviction during the redirect examination of a witness, even though the prior conviction had not been discussed during that witness's direct examination or cross-examination. As a general rule, it is true that the scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination.[25] But it is within the discretion of the trial court to allow a witness to testify on redirect examination to facts that could have been elicited during his direct examination.[26] For instance, one appeals court has allowed evidence first introduced on the redirect examination of a witness because the trial court had given opposing counsel the opportunity to recross-examine that witness after the redirect examination had ended.[27]
Similarly here, although evidence of Dominguez's prior conviction was first introduced on the redirect examination of a witness, the trial court gave Dominguez's counsel ample opportunity to recross-examine that witness. We also note that Dominguez's counsel did not even object at trial to the introduction of the prior conviction on redirect examination. Finally, we find Dominguez's argument to be specious because the records showing his prior conviction were self-authenticating — a witness was not even needed to authenticate them.[28] Considering these facts, we hold that the trial court did not abuse its discretion in admitting the evidence. Thus, we reject Dominguez's third assignment and affirm the trial court's judgment.
Judgment affirmed.
DOAN, P.J., and HILDEBRANDT, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Decision.
[1] We have sua sponte removed this case from the accelerated calendar.
[2] Evid.R. 404(B).
[3] State v. Johnson (Sept. 3, 1998), Cuyahoga App. No. 73178, unreported.
[4] Johnson, supra.
[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] See Evid.R. 403(A).
[11] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, paragraph two of the syllabus.
[12] 1974 Committee Comment to R.C. 2901.11.
[13] R.C. 2901.11(A)(1).
[14] See State v. Foster (Apr. 2, 1997), Hamilton App. No. C-960278, unreported.
[15] State v. Burton (Mar. 31, 1995), Greene App. No. 94-CA-13, unreported.
[16] State v. Patterson (1982), 69 Ohio St.2d 445, 447,432 N.E.2d 802, 803.
[17] State v. Scott (1982), 69 Ohio St.2d 439, 432 N.E.2d 798, syllabus.
[18] State v. Latina (1984), 13 Ohio App.3d 182, 187,468 N.E.2d 1139, 1145-1146.
[19] R.C. 2925.03(C)(10).
[20] R.C. 2925.03(C)(10)(c).
[21] Evid.R. 902(4); State v. Fleming (June 7, 1989), Hamilton App. No. C-880129, unreported (certified copies of prior offenses were self-authenticated records).
[22] Evid.R. 902(1).
[23] Civ.R. 44(A)(1).
[24] See, also, Evid.R. 803(8) (public-records exception to hearsay); State v. Glacken (1984), 13 Ohio Misc.2d 17, 19,469 N.E.2d 95, 98 (Evid.R. 803[8] encompasses dockets and journal entries of courts).
[25] Holtz v. Dick (1884), 42 Ohio St. 23, paragraph seven of the syllabus.
[26] State v. Thompson (May 15, 1995), Butler App. No. CA94-07-147, unreported; State v. Wilson (1972), 30 Ohio St.2d 199, 204,283 N.E.2d 632, 636.
[27] See Thompson, supra.
[28] See Evid.R. 902 ("extrinsic evidence of authenticity" not needed for self-authenticated documents).